# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER LEGG, on behalf of himself and other similarly situated individuals, | ) ) ) | **CASE NO. 14–cv–01716–PGB–DAB** |
|  | ) | **CLASS ACTION** |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| E-Z RENT A CAR, INC., A Florida corporation d/b/a in California as FLORIDA E-Z RENT A CAR, INC., | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND
## REQUEST FOR FEES

**TABLE OF CONTENTS**

I.      **INTRODUCTION**................................................................................1

II.    **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**..........3

III.   **SETTLEMENT TERMS**....................................................................5

       A.    Defendant's Changes in Practice ................................................5

       B.    The Relief Provided by the Settlement ........................................6

       C.    Payment of Class Notice, Claims Administration, and Attorneys' Fees .......7

IV.   **CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE NOTICE OF THE ACTION AND THE SETTLEMENT** ..................................8

V.    **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND IT MERITS FINAL APPROVAL** ...............................................10

       A.    The Settlement Satisfies the Eleventh Circuit's Bennett Factors ..................12

              1.  The Likelihood of Success at Trial ........................................12

              2.  The Range of Possible Recovery and the Point at which the Settlement Is Fair, Reasonable, and Adequate..........................13

              3.  The Complexity and Expense of Further Litigation ................14

              4.  The Substance and Amount of Opposition to Settlement........16

              5.  The Stage of Proceedings at which Settlement Achieved ......16

       B.    The Settlement Does Not Fall Under the Class Action Fairness Act's Provisions on Coupon Settlements ........................17

VI.   **THE COST AND ATTORNEY FEE AMOUNT IS REASONABLE**................19

       A.    The Cost and Fee Amount Is Reasonable as a Percentage of the Total Settlement...............................................................20

VII.  **CONCLUSION** .............................................................................22

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adams v. Southern Farm Bureau Life Ins. Co.*,
    493 F.3d 1276 (11th Cir. 2007) ...........................................................................8

*Allapattah Servs., Inc. v. Exxon Corp.*,
    2006 U.S. Dist. LEXIS 88347 (S.D. Fla. Apr. 7, 2006) ......................................16

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 543 (S.D. Fla. 1988).........................................................................15

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ......................................................................11,12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).............................................................................................19

*Camden I Condo Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .....................................................................19,20

*Chesbro v. Best Buy Stores, L.P.*,
    No. 10-774, 2014 U.S. Dist. LEXIS 64088 (W.D. Wash. May 7, 2014) ..............7

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)..................................................................19

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ..................................................................8,20,22

*Figueroa v. Sharper Image Co.*,
    517 F.Supp.2d 1292 (S.D. Fla. 2007...................................................................14

*Gibson & Company Ins. Brokers, Inc. v. QFA Royalties LLC.*,
    No. 06-cv-05849 (C.D. Cal. Feb. 27, 2009). .........................................................7

*Grant v. Capital Mgmt. Servs.*, L.P.,
    No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) .............7

*Harris v. Mexican Specialty Foods, Inc.*,
    564 F.3d 1301 (11th Cir. 2009) ............................................................................3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................................................19

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)..........................................................................11

*In re Checking Acct. Overdraft Litig.*,
    830 F.Supp.2d 1330 (S.D. Fla. 2011) ............................................................11,19

*In re Domestic Air Transport. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993)........................................................................11

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) .............................................................................17

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D.La. 1993)..........................................................................15

*In re Sunbeam Sec. Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) .......................................................11,14,16

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ...........................................................................10

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ...........................................................................8

*Katz v Donna Karan International, Inc.*,
    No. 14-cv-00740-PAC (S.D.N.Y. Jan. 30, 2015) ..................................................13

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................................ *passim*

*Martin v. Pacific Parking Systems, Inc.*,
    No. 12-56654 (9th Cir. July 25, 2014)..................................................................13

*Newman v. Sun Capital Corp.*,
    2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ....................................12

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................15,16,18

*Poertner v. The Gillette Company*,
    No. 14-13882 (11th Cir. July 16, 2015)...............................................................21

*Reibstein v. Rite Aid Corp.*,
    761 F.Supp.2d 241 (E.D. Pa. 2011) ....................................................................18

iv

*Saf-T-Gard v Seiko*,
    No. 09 C 776 (N.D. Ill. Jan. 14, 2011)....................................................................7

*U.S. v. Alabama*,
    271 F. App'x 896 (11th Cir. 2008) ......................................................................8

*Warren v. City of Tampa*,
    693 F.Supp. 1051 (M.D. Fla. 1988)....................................................................11

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ..........................................................................20

## **Statutes**

15 U.S.C. § 1681c(g)(1)...........................................................................................3

15 U.S.C. § 1681n(a)(1)(A) .....................................................................................3

28 U.S.C. §1712(d) ...............................................................................................17

28 U.S.C. § 1715 ....................................................................................................10

## **Rules**

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................8

Fed. R. Civ. P. 23(e)(1)............................................................................................8

Fed. R. Civ. P. 23(h) .............................................................................................19

## **Miscellaneous**

CAFA, Pub. L. No. 109-2, § 2, 119 Stat. 4............................................................17

S.Rep. No. 109-14, at 15 (2005), 1005 U.S.C.C.A.N. 3, 16................................17

Plaintiff, Christopher Legg ("Plaintiff" or "Mr. Legg"), individually and as a representative of the Class, submits this motion and memorandum in support of final approval of the class action settlement and request for fees. This Court granted preliminary approval of this settlement on May 28, 2015 and ordered Plaintiff and Defendant E-Z Rent A Car ("Defendant")(jointly, the "Parties") to submit a motion for final approval by August 12, 2015.  [ECF No. 64].

The Parties respectfully request this Court's final approval of the settlement terms and request for attorneys' fees and base this request upon this Motion, the declarations and exhibits filed concurrently with the Motion, and the oral argument and additional evidence submitted at the hearing on this matter.

## I.       INTRODUCTION

After months of litigation, which included motion practice, informal discovery, venue transfer, amended pleadings and class definition, and extensive negotiations regarding the claims and defenses of this case, the Parties were finally able to reach a settlement with the assistance of the Honorable Morton G. Denlow (Ret.) of JAMS, former Magistrate Judge for the Northern District of Illinois. Although the full-day mediation was hard fought, the Parties were ultimately able to arrive at a resolution for the Class. The ultimate Settlement Agreement to which the Parties agreed provides tangible and substantial relief for the Class Members. [ECF No. 58-1].

The Settlement Agreement resolves allegations that EZRAC violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq., as amended* (the "FCRA").  Plaintiff alleged that Defendant violated his rights and those of his fellow Class Members by willfully failing to comply with

- 1 -

the requirements of FACTA.  Specifically, Plaintiff claimed that Defendant printed a receipt that contained the expiration date of his credit card when he rented a car from Defendant. EZRAC denies these allegations and claims the documents upon which the expiration dates were printed were not receipts and, even if they were, it was not done willfully as Plaintiff alleged.  Nevertheless, EZRAC does not oppose the relief requested in this motion and it consents to an order granting final approval to the class action settlement and the Settlement Agreement.

As set forth below, this Settlement comfortably meets the standards for final approval. In its Preliminary Approval Order, the Court found that "the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class Members …" [ECF No. 64, ¶9]. Nothing has changed to alter that conclusion.

The non-monetary and monetary relief secured on behalf of the class is significant and provides real value to the class.  Class Members' reactions to this Settlement have been positive and many have already taken advantage of their reward. Only two Class Members have chosen to opt out, while over 1,000 have made a claim as of the time of filing this Motion.  Moreover, this claim rate will only increase with time, since Class Members have an additional 18 months from the date of issuance to use their reward – there is no formal "claims" deadline.

With respect to the attorneys' fee request – it is a reasonable one – requesting less than eight percent of the total settlement fund.  Accordingly, Plaintiff asks this Court to grant final approval of this class action settlement and approve class counsel's reasonable request for fees.

## II.   SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

As stated in the operative Complaint, the gravamen of this case alleges that EZRAC violated FACTA by printing receipts containing the expiration date of customers' credit cards. See 15 U.S.C. § 1681c(g)(1) ("[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."). *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The Complaint alleges EZRAC's non-compliance with FACTA was willful or knowing, thus entitling Plaintiff and the Class Members to statutory damages between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A). The Settlement Agreement resolves these claims.

The litigation was contentious. The case was initially filed in the Southern District of California, No. 14−cv−1124−WQH−BGS, on May 1, 2014. [ECF No. 1]. Shortly thereafter, the Parties stipulated to an extension of time, until July 16, 2015, in order to allow EZRAC to "properly investigate the allegations levied against it in the Complaint." [ECF No. 6]. On July 9, 2015, the Parties jointly sought a second extension of time, after agreeing to participate in early mediation before the Hon. Edward A. Infante (Ret.) on September 5, 2014. [ECF No. 9].

This first mediation was cancelled due to counsels' disagreement over the class description. As a result, the litigation commenced with dueling motion practice. Plaintiff moved to file an amended complaint expanding the class from California to a nationwide action [ECF No. 11] and Defendant filed a motion to transfer venue to the Middle District of Florida from the Southern District of California. [ECF No. 14] Neither motion was filed with the consent of the other party.  After conducting significant due diligence, Plaintiff

ultimately agreed to accept Defendant's wish to re-locate the case and it was transferred to Florida before this Court. [ECF No.  21].

On November 14, 2014, Plaintiff filed an amended complaint – now the operative complaint in this action – alleging a nationwide class of persons who suffered violations of FACTA at the hands of EZRAC. [ECF No. 34].

Once the case was transferred, the Parties engaged in informal discovery, and scheduled a mediation for January 6, 2015 with Judge Denlow in Chicago, Illinois. In light of the mediation schedule, the Parties jointly moved for an extension of time, until January 26, 2015, for EZRAC to respond to the amended complaint. [ECF No. 49].   The Parties submitted extensive briefing to Judge Denlow describing their respective positions in the litigation.

On January 6, 2015, the Parties attended the mediation, at which they exchanged additional information, including exact size of the class and other highly relevant data.   After a full day of negotiation and in spite of the Parties disagreement regarding liability, Judge Denlow helped the Parties find a resolution which was fair to the Class.  Prior to finalizing the ultimate Settlement Agreement, Class counsel requested that Defendant provide them with further discovery and Defendant promptly complied. The Settlement Agreement was then composed and finalized using this breadth of information. [ECF No. 51].

As a procedural matter, EZRAC filed its answer and affirmative defenses to Plaintiff's amended complaint on January 26, 2015, since the case had not yet been stayed. [ECF No. 53]. The following day, the Court stayed the case and instructed the Parties to file preliminary settlement documents by March 16, 2015 [ECF No. 55]. On March 16, 2015,

Plaintiff filed his unopposed Motion for Preliminary Approval of Class Action Settlement. [ECF No. 56].

The Parties appeared on May 15, 2015 at the Preliminary Fairness Hearing. Plaintiff's counsel presented oral argument regarding why notions of fairness and case law supported the Class wide Settlement.  The Court requested minor changes be made to the Class notice, but otherwise noted that the Settlement seemed like a fair one.  The Parties submitted its revisions to the notice to chambers, after which the Court granted preliminary approval of the Parties' Settlement Agreement, certified the Settlement Class, approved the Parties' proposed plan to give notice of the Settlement to the class, and set deadlines for Class Members to object to or opt out of the Settlement. [ECF No 64].

### III. SETTLEMENT TERMS

The Settlement Class was conditionally certified as follows:

> **All persons within the United States who rented from E-Z Rent A Car, Inc. ("EZRAC") during the relevant class period, May 1, 2012 through May 31, 2014, and who received a closed rental agreement at the termination of the vehicle rental that contained the expiration date of the credit card used to purchase the rental.** [ECF No. 64, ¶4].

### A. Defendant's Changes in Practice

EZRAC has already ceased printing expiration dates on its rental agreements. The injunction described in the Settlement Agreement – that Defendant will refrain from printing expiration dates on its receipts for a period of three years – provides assurance that EZRAC will comply with the requirements of FACTA going forward. [Declaration of Charles Graham, "Decl. Graham" ¶ 8.]

**B. The Relief Provided by the Settlement**

In addition to changing its practices, the Settlement Agreement establishes the equivalent of a $6,011,636 non-reversionary Settlement Fund. [ECF No. 56, p.1].  No claim is necessary. Each Class Member will automatically receive the benefit, subject only to redeeming the benefit. Id.

Under the terms of the Settlement, payment to the Class Members will be made in the form of "E-Z Money Points," which are useable the same as dollars for renting vehicles, obtaining upgrades, renting a GPS and making other purchases from EZRAC. In essence, these E-Z Money Points operate exactly like cash, enabling the recipient to use them when and how he chooses.  Each Class Member receives points in relation to the number of times he or she received a receipt from Defendant in violation of FACTA.   [A "Transaction".] [Decl. Graham ¶ 4.]

In setting a value for each Transaction, EZRAC analyzed data from its nationwide rentals and determined that $27.50 was the average daily rental rate for one of its vehicles. [Decl. Graham ¶ 3.]  Thus, each Class Member receives approximately a one-day rental -  $30.00 worth of E-Z Money Points  or 3,000 E-Z Money Points – per Transaction, up to five Transactions or $150.00 total.  Additionally, each Class Member will also receive (in the form of a second unique code) credit for one (1) "additional driver" at no cost, worth $9.95 per day, for the entire rental of his or her vehicle. There will be no blackout dates and no restrictions on use.  [ECF No. 58-1].

This Settlement has true value for the Class Members.  These points work the **same as cash** and are **fully transferrable** (either by transferring the unique code from one

person to another, or by requesting that EZRAC complete the transfer request in cases where the unique code has already been input into a Class Member's EZRAC account) and **may be used separately** (over several rentals) or in conjunction with other E-Z Money Points and discounts.[1] **Class Members don't even have to "claim" their award – they automatically receive it**. [Decl. Graham ¶ 4.] Each Class Member is automatically entitled to his or her award, subject to inputting the code in their online account and actually using it.

Additionally, plaintiff Legg requests an incentive payment for his work representing the class in the amount of $5,000, in addition to any recovery he is entitled to as a Class Member. Id. This is well within the range of incentive awards allowed in other class action cases of similar complexity. See, e.g., *Gibson & Company Ins. Brokers, Inc. v. QFA Royalties LLC.*, No. 06-cv-05849, DE 212 (C.D. Cal. Feb. 27, 2009) ($15,000 incentive award); *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. Jan. 14, 2011) ($12,000 incentive award); *Chesbro v. Best Buy Stores, L.P.*, No. 10-774, 2014 U.S. Dist. LEXIS 64088 at *11 (W.D. Wash. May 7, 2014) ($5,000 incentive award); *Grant v. Capital Mgmt. Servs.*, L.P., No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *21 (S.D. Cal. Mar. 5, 2014) ($5,000 incentive award) (collecting cases).

## C. Payment of Class Notice, Claims Administration, and Attorneys' Fees

The benefits to the class will not be reduced by the cost of administering the settlement or the payment of costs and attorneys' fees to class counsel. EZRAC agreed to separately pay the cost of the class notice and claims administration, as well $475,000.00 for the costs and attorneys' fees incurred prosecuting this lawsuit. [ECF No. 58-1 § IV(A)].

---

[1] Like all other E-Z Money Points, the points to which each Class Member is entitled will expire after 18 months.

With respect to administration, Defendant has already paid in excess of $66,000 to KCC for the cost of administration. [Decl. Graham ¶ 9.]  KCC's duties have included building a website, sending out notice by first class mail and email, including locating Class Members whose contact information was no longer accurate and sending a second notice to those individuals.  KCC has also managed Class Members' claims and questions promptly, and has provided support to Class Counsel with any questions they have received. [Declaration of Lacey Racines, "Decl. Racines" ¶ 2.]

The reasonableness of the attorneys' fees and costs amount is further demonstrated in Section VI, *infra*.

## IV.   CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE NOTICE OF THE ACTION AND THE SETTLEMENT.

The Federal Rules require a class action settlement provide "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B), (e)(1). The due process clause also guarantees unnamed class members the right to notice of a class action settlement, requires that the notice apprise them of the terms, and allow each class member to make his own determination about its fairness. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).   This Settlement has complied with all of these requirements.

Neither Rule 23 nor Due Process requires all class members to receive *actual* notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). In determining the sufficiency of the class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, quoting *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007). Moreover, the notice

"need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

The notice plan, which was approved by the Court, truly provided the best notice practicable. In approving the notice plan, the Court found it "[met] the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice." [ECF No. 64, ¶10]. As such, "the proposed notice is clearly designed to advise the Settlement Class Members of their rights. Id. The Court's observations regarding notice have proven correct.

The Settlement Administrator precisely followed the Court-approved notice plan. On June 26, 2015, KCC sent notice of the Settlement to 54,986 class members by direct mail and 66,391 by email. Because the class is comprised solely of existing EZRAC customers, the claims administrator was able to utilize Defendant's database of *recent* contact information to reach the maximum number of Class Members. In fact, every Class Member had rented from EZRAC in the past three years and, as such, their contact information was presumed to be quite accurate.  [Decl. Racines ¶¶ 3-6]

The Settlement website went live on June 26, 2015, which included Notice, the Settlement Agreement, contact information for Class Counsel and the administrator, and other relevant documents and deadlines. [Decl. Racines ¶ 9.]  On August 10, 2015, KCC sent supplemental notice to an additional 2,082 Class Members whose contact information had changed since Defendant had last had contact with them.[2] [Decl. Racines ¶ 6] Class Members

---

[2] For those "bounce back" emails and addresses, KCC did a secondary search for current contact information and then sent the supplemental notice.

have until August 26, 2015, to opt out or to object. KCC almost made a toll-free number available to the class members. [Decl. Racines ¶ 8.]

The Notice gave Class Members a detailed explanation of the Settlement, including the relief, the release of claims, and amounts of the incentive award and the costs and attorneys' fees requested, to enable them to evaluate their options and make an informed decision.[3] [Decl. Racines ¶¶ 3-7.] Each notice contained a unique code that the Class Member may use to "add" to his or her EZ Money Point account and a second unique code to be redeemed for the "additional driver" benefit.  Notice was provided in both English and Spanish.

KCC also timely served the Attorneys General of each of the fifty United States, the Attorney General of the United States, and other required government officials, with notice of the Settlement, in compliance with 28 U.S.C. § 1715. [Decl. Racines ¶¶ 1, 2.]

As of the time of filing this Final Motion, 1107 Class Members have redeemed their E-Z Money Points while 1062 have redeemed their free additional driver benefit, respectively.[4]  [Decl. Graham ¶ 1.]  Thus, the Notice was extremely successful, because it complied with the Court's Order, the Federal Rules, and due process in providing the very best notice practicable.  This success is reflected in the number of Class Members who have claimed their reward, even at this early stage.

## V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND IT MERITS FINAL APPROVAL

---

[3] At the preliminary fairness hearing, the Court instructed the Parties to make certain alterations to their existing Notice, including changes such as font size and language.  The Parties revised the Notice, submitted it to the Court and the Court issued its preliminary fairness Order thereafter.
[4] Class Counsel intends to provide updated data on the claim rate at, or before, the final approval hearing on September 25, 2015.

Courts will grant final approval of class action settlements if the proposed settlement presents terms that are fair, adequate and reasonable for the class. Plaintiff contends that the terms agreed to in this case are fundamentally fair since they provide real value to the class, the same as cash, and put a stop to violations of a federal statute designed to prevent identity theft.  This settlement is deserving of final approval.

As an initial matter, Courts favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  This is because a settlement provides class members with concrete benefit in the near term, rather than waiting for the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).  When conducting an analysis regarding final settlement, the Court should favorably analyze the proposed settlement in light of this strong judicial policy supporting settlements. *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001).

Furthermore, even though a Court's approval of a class action settlement is discretionary, some deference should be given to the consensual decision of the Parties. *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988), aff'd, 893 F.2d 347 (11th Cir. 1989).  The Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is considered fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.' *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011).

Here, the Settlement Agreement came after months of contentious litigation which included motion practice, informal discovery, and stop-and-start negotiations. The Parties' capstone effort toward settlement was an in-person, full-day mediation session facilitated by the Honorable Morton Denlow, a highly-experienced and well-respected neutral. See *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of ... a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d at 1345 (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

### A.  The Settlement Satisfies the Eleventh Circuit's Bennett Factors.

Courts within the Eleventh Circuit analyze six factors to determine whether a proposed settlement is fair, adequate and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or  below the range of possible recovery at which a settlement is fair, adequate and reasonable;  (4) the complexity, expense and duration of litigation; (5) the substance and amount of  opposition to the settlement; and (6) the stage of proceedings at which the settlement was  achieved. *Bennett*, 737 F.2d at 986.

Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

### 1)  The Likelihood of Success at Trial.

The first *Bennett* factor considers the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D.

Fla. 2005). Where success at trial is not certain for plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the Class Members' ultimate success at trial is far from guaranteed. EZRAC's Answer and affirmative defenses denied that it "willfully" violated FACTA and argued that rental agreements provided to the customer prior to taking physical possession of the rental vehicle are not "receipts" governed by 15 U.S.C. § 1681c(g). [ECF No. 53]. Plaintiff presumes that this pivotal issue – which was his singular claim against Defendant – would have resulted in significant dispositive motion practice.

Two recent cases expose the significant risk here and gave the Parties cause to discuss a settlement. First, a District Court in New York set forth an onerous standard to establish willfulness under FACTA, the very cause of action that Plaintiff alleged, and dismissed plaintiff's complaint outright. *Katz v Donna Karan International, Inc.*, No. 14-cv-00740-PAC (S.D.N.Y. Jan. 30, 2015). Next, the Ninth Circuit Court of Appeals affirmed the denial of Plaintiff's motion for class certification, holding that there was no reasonably efficient way to determine which Class Members were part of the class, causing manageability issues. *Martin v. Pacific Parking Systems, Inc.*, No. 12-56654 (9th Cir. July 25, 2014).

Based on these recent decisions, Plaintiff chose to engage in settlement discussions with Defendant. As a result, the Parties were able to agree on reasonable settlement terms which certainly benefit the Class. Plaintiff believes that this settlement is a win for the Class and avoids the uncertainty of continued litigation.

This Settlement stands in stark contrast to the uncertainties of going forward with the litigation and, ultimately, to trial.   Rather than run the risk of total failure, the Settlement Agreement provides real and tangible benefit to each Class Member, which far outweighs the uncertainty that Plaintiff and his Class Members faced in going forward. There is simply no way to know which party would ultimately prevail at trial – and this very notion counsels in favor of approving this settlement.

### 2)   The Range of Possible Recovery and the Point at which the Settlement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F.Supp.2d at 1331. The range of potential recovery can span from a finding of total non-liability to varying levels of injunctive relief and monetary benefits. *Figueroa v. Sharper Image Co*., 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007), quoting *Lipuma*, 406 F.Supp.2d at 1322. However, the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to "evaluate the proposed settlement in its totality." *Figueroa*, 517 F.Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. Here, each Class Member automatically receives between $30.00 and $150.00 in E-Z Money Points; good for renting vehicles, obtaining upgrades, renting a GPS, and making other purchases from EZRAC. [ECF No. 58-1 § II(N)]. Were Plaintiff to pursue this class action to a trial on the merits and win, his recovery would range between $12 Million and $121 Million; the latter (and possibly the former) amounting to "bet-the-company" damages.  Conversely, this settlement gives class members over $6 Million in true relief – an amount that is both

feasible for Defendant and tangible for the Class Members. Thus, these *Bennett* factors weigh in favor of approval.

### 3)  The Complexity and Expense of Further Litigation.

The next factor is the complexity and expense of further litigation. Here, and as described above, the Parties each face substantial uncertainty with respect to liability. This uncertainty would amount to hard fought and expensive litigation.  There is no doubt this case would become an increasing burden to counsel, the Parties and this Court.

In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F.Supp.2d at 1323 (citation omitted).  "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007), quoting *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 543, 543 (S.D. Fla. 1988).

Were this case to move forward rather than settle, there is no doubt that substantial motion practice would ensue.  In addition to class certification discovery and motion practice, there is no doubt that Defendant would file a dispositive motion on the issue of willfulness – and the losing party to each of these would most likely file for an interlocutory appeal as a direct result. Ultimately, taking this case to trial would require multiple experts and extensive discovery into these expert's opinions and reports.  It would also require pretrial motion practice, the expense and time expenditure of actually preparing a class action trial, and conducting the trial itself – which would certainly take weeks to put on.

Continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources.

Conversely, when additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F.Supp.2d at 1323, quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La. 1993); see also *Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of continued litigation favor the approval of this Settlement.

### 4) The Substance and Amount of Opposition to Settlement.

The next *Bennett* factor is the substance and amount of opposition to the settlement. **There have been no objections.** The fact that there have been none, despite the comprehensive notice provided to the class, presumptively demonstrates that Class Members find the agreement reasonable and fair, which strongly favors the settlement. See *Lipuma*, 406 F.Supp.2d at 1324; See also, *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006)("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."). Accordingly, this prong favors approval as well.

### 5) The Stage of Proceedings at which Settlement Achieved.

The final *Bennett* factor looks to the stage of proceedings where the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F.Supp.2d at 1383; see also *In re Sunbeam*,

176 F.Supp.2d at 1332. The Parties' full knowledge of the merits and risks of their respective cases counsels in favor of final approval.  That is the case here.

In this matter, the Settlement Agreement was not reached until after substantial informal discovery, months of negotiation and motion practice, and a full-day mediation before a highly respected neutral. Class counsel ensured they had sufficient information about Defendant, including its internal policies and procedures, the size of the Settlement Class, and the range of the Class's potential damages. [Decl. Graham ¶ 7.] By the time the Settlement was reached, class counsel had sufficient information to evaluate the strength of Plaintiff's claims and weigh the benefits of settlement versus continued litigation. Thus, the stage of proceedings factor weighs in favor of final approval as well.

### B. The Settlement Does Not Fall Under The Class Action Fairness Act's Provisions on Coupon Settlements.

The Class Action Fairness Act of 2005 ["CAFA"] subjects class action settlements to heightened scrutiny where class members' rewards are in the form of coupons. 28 U.S.C. §1712(d).  However, case law and the legislative history of CAFA reveal that this case is not a coupon settlement and, thus, is not subject to heightened scrutiny.

When Congress passed CAFA, they discussed their concern about settlements which provide class members with little or no value, especially where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." CAFA, Pub. L. No. 109-2, § 2, 119 Stat. 4.  The Senate Judiciary Committee's Report which reviewed CAFA reveals that Congress' primary concern involved situations where "class members receive nothing more than promotional coupons to purchase more products from

the defendants." Id., citing S.Rep. No. 109-14, at 15 (2005), 1005 U.S.C.C.A.N. 3, 16.[5]

"These discounts require class members to hand over their own money before they can take

advantage of the coupon, and they often are only valid for select products and services." *In*

*re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 950-51 (9th Cir. 2015).

Numerous courts recognize the distinction between a coupon or discount and

a gift card or cash equivalent that provides real value. For example, in the recent opinion *In*

*re Online DVD-Rental*, *supra*, the Ninth Circuit found that the relief provided there - $12 in

cash or a $12 Walmart gift card – was not a coupon because "[i]nstead of offering class

members the chance to receive a percentage discount…the settlement gives class members

$12 to spend on any item carried on the website of a giant, low-cost retailer."  Likewise, in

*Reibstein v. Rite Aid*, the court held that $20 Rite Aid gift cards that were mailed to "(mostly)

regular customers, have no expiration date, are freely transferrable, and can be used for

literally thousands of products for which ordinary customers …have need" are "more like

cash than coupons." *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 255-56 (E.D. Pa. 2011.)

Courts within this Circuit are in accord with this analysis: "The phone cards

are not mere coupons, but rather full-value, fully transferable, long-distance telephone cards-

not unlike those available from any number of retail outlets." *Perez v. Asurion Corp.*, 501 F.

Supp. 2d 1360, 1383 (S.D. Fla. 2007).

Thus, the analysis turns on whether the award operates more like cash (or a

gift card), rather than a discount. Like the situations in *In re Online-DVD*, *Asurion*, and

---

[5] The report criticized settlements which provided  "$30 to $40 discounts" on a future cruise, "a $5 to $10 voucher good for future purchases of particular computer hardware or software products", "$1 off every subsequent $5 purchase" at a chain of restaurants, "a 30 percent discount on selected products" during a one-week time period, $55 to use on a purchase of a new crib from a defendant crib producer accused of making defective cribs, "$1.25 off a $25 dollar [video] game", and so on. Id. at 15–17.

*Reibstein*, this case provides Class Members with a reward that works exactly like a gift card or cash.  **These E-Z Money Points may be transferred like cash, given away like cash, and sold like a gift card.  They may be used for any product offered by EZRAC.  There are no blackout dates and no restrictions on use.** [Decl. Graham ¶ 4.] Further, in some instances, Class Members that have four or more Transactions will actually earn more than they would have had they been awarded the $100 statutory minimum for a willful violation of FACTA.

Thus, because this case does not implicate the issues which arise under a coupon settlement, this Settlement should not be subjected to the heightened scrutiny required by CAFA.

## VI.    THE   COST   AND   ATTORNEYS'   FEE   AMOUNT   IS   REASONABLE

Rule 23 provides for an award of costs and attorney fees to class counsel who prosecute the case and obtain the settlement for the class. Fed. R. Civ. P. 23(h). Both the Settlement Agreement and the law provide for an award of attorneys' fees here because "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig*., 830 F.Supp.2d at 1358, citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the agreement on the relief to be provided to the class, the Parties' subsequent agreement on the cost and attorneys' fee award stems from a mediation with Judge Denlow, a highly experienced and well-respected mediator. Typically, where the

parties come to an agreement on the reimbursement of fees and costs, the court will give that agreement substantial deference. See *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of the fee."); accord *Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005).

The Parties have agreed that $475,000 is a reasonable sum for costs and attorneys' fees given the procedural background of the case and the total settlement value to the class. [[Decl. Graham ¶ 6.]  The reasonableness of this figure is confirmed by examining it both as a percentage of the total Settlement, as well as the various factors established for evaluating attorneys' fee requests (including the "*Johnson*" factors[6]). *Camden I Condo. Ass'n*, 946 F.2d at 774-775 (the attorney fee award should be determined on a percentage basis, but the *Johnson* factors "continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards.")

### A.     The Cost and Fee Amount Is Reasonable as a Percentage of the Total Settlement.

Class counsel request that the Court award them $475,000 in attorneys' fees and reimbursed costs. Class counsel respectfully assert that this amount is fair and reasonable. [Declaration of Scott D. Owens] [Declaration of Kira M. Rubel] This amount is presumptively reasonable because it represents a small percentage of the total fund provided for the class.

---

[6] *Johnson*'s twelve factors are:

(1) time and labor, (2) novelty and difficulty of the questions, (3) requisite skill, (4) preclusion of other employment, (5) customary fee, (6) fixed or contingent fee, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation and ability of attorneys, (10) "undesirability" of the case, (11) nature and length of professional relationship with client, and (12) award in similar cases.

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 n.5 (11th Cir. 1999) (summarizing factors in *Johnson*, 488 F.2d at 717–19).

"The majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I Condo. Ass'n*, 946 F.2d at 774. Courts regard this range as the "bench mark" range of reasonableness. See Id. at 775.[7] **The mediated cost and fee award here is less than this Circuit's "benchmark" by a significant amount.** The Settlement Agreement conveys the equivalent of $6,011,636 upon the Class Members, paid in the form of "EZ Money Points". Class counsel's requested attorneys' fee is only 7.9% of that figure. This alone establishes its reasonableness. See *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("25% is generally recognized as a reasonable fee award in common fund cases.").

Under typical Eleventh Circuit analysis, reasonable attorneys' fees are ordinarily derived by calculating the total fund, which includes the cost of notice and administration. For example, in *Poertner v. The Gillette Company*, the Eleventh Circuit held that $5.68 million in attorneys' fees, against a settlement fund valued at $50 million, was reasonable under the circumstances, even though only 55,346 of the nearly 7.26 million class members sought relief under the settlement— amounting to a payout of only $344,850. *Poertner v. The Gillette Company*, No. 14-13882 (11th Cir. July 16, 2015).

Incidentally, the claim rate in this case will easily surpass the rate in *Gillette* (7/10 of 1% of the Class). At last count, more than 1107 Class Members (1063 of which have also taken the $9.95 additional driver benefit) have already sought to take advantage of the settlement benefits by logging into their E-Z Money account. [Decl. Graham ¶ 1.] That figure already represents nearly 1% of the Class. **Importantly, the remaining Class Members who have yet to redeem their reward still have 18 months to do so.**

---

[7] The benchmark, however, is only that. The award may exceed it. *Camden I Condo. Ass'n*, 946 F.2d at 774-775 (as a general rule, "an upper limit is 50%").

Moreover, in a typical case, the costs and fees are paid from the class members' recovery. Here, however, EZRAC is paying counsel in addition to, and separate and apart from, the benefits being made available to the class. The total settlement value also includes the money EZRAC must pay for the cost of issuing notice to the class and administrating the settlement ($66,168.00, through July 2015). Taken from the sum of these amounts, the attorneys' fees requested amount to only 7.8% of the total settlement.

Finally, this percentage does not account for the non-monetary benefit of the Settlement. Again, the Settlement Agreement ensures that EZRAC will continue to comply with FACTA for at least three years following final approval by the Court. Although this benefit's value is hard to quantify in dollar terms, its presence further enhances the reasonableness of the cost and fee amount. See *Faught*, 668 F.3d at 1244-45 (cost and fee award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class."). In short, the mediated cost and fee amount is extraordinarily reasonable on a percentage basis, and should be approved.

## VII.   CONCLUSION

The Parties request that this Court grant this final motion and request for attorneys' fees and costs in the amount of $475,000. This Settlement provides tangible and immediate benefits for the Class Members. Moreover, the Settlement terms are particularly apropos here, given that the Class Members consist of loyal E-Z Rent A Car customers who will benefit from free and discounted items from Defendant.

This litigation is one which could have resulted in contentious, expensive, and complex motion practice before finding a resolution.  Conversely, this Settlement is the result

of rational, arm's-length, informed negotiations with the assistance of an experienced neutral.

Based on the *Bennett* factors identified above, this Settlement is fair, reasonable, and adequate under Rule 23, and thus Mr. Legg respectfully requests that this Court enter an order granting it final approval.

Respectfully Submitted,

/s/  Scott D. Owens
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

/s/ Kira M. Rubel
Kira M. Rubel
LAW OFFICES OF KIRA M. RUBEL
555 West Beech St., Ste. 230
San Diego, CA 92101
Tel: 800-836-6531
Fax: 877-204-7499
krubel@kmrlawfirm.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being serviced this date via US Mail and/or by some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By:   /s/  Scott D. Owens
      Scott D. Owens, Esq.